NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CITY OF ASBURY PARK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civ. A. No. 17-5059-BRM-LHG |
| v. | : | |
| | : | |
| STAR INSURANCE COMPANY and | : | |
| JOHN DOES CORPORATION (1-10), | : | OPINION |
| | : | |
| Defendants. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is: (1) Plaintiff City of Asbury Park's ("Asbury Park" or the "City") Motion for Summary Judgment for Declaratory Judgment and (2) Defendant Star Insurance Company's ("Star") Motion for Summary Judgment on the Priority of Recovery of Lien Proceeds pursuant to Federal Rule of Civil Procedure 56. (ECF Nos. 17, 18.) Both motions are opposed. Having reviewed the submissions filed in connection with the motions and having heard oral argument on July 17, 2018, pursuant to Federal Rule of Civil Procedure 78(a), for the reasons set forth below and for good cause shown, Asbury Park's motion is **DENIED** and Star's motion is **GRANTED**.

**I.    BACKGROUND**

For the purposes of competing motions for summary judgment, "the court construes facts and draws inferences in favor of the party against whom the motion under consideration is made." *Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) (quotations omitted). This Court will not weigh the evidence or make credibility determinations as "these tasks are left for the

fact-finder." *Petruzzi's IGA Supermarkets v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993).

This case arises from the public entity excess liability insurance policy, number CP 0513638 ("Star Policy") for the period February 15, 2010, to February 15, 2011, issued by Star to Asbury Park. (ECF No. 18-1 at ¶¶ 1, 3.)[1] In the Star Policy, Star agreed to indemnify the City in the event the City is liable, under the Workers' Compensation Act, for damages on account of bodily injury suffered by an employee of the City in excess of the City's self-insured retention of $400,000.00. (*Id.* at ¶ 3.)[2] The policy provides the City will retain, as a self-insured retention:

> 1. that amount stated in the Policy Declarations [$400,000.00], and
> 2. all interest costs, which interest shall not reduce the self-insured retention, and
> 3. all costs and expenses of any and all investigation, defense, negotiation and settlement, and
> 4. all Intermediate Reinsurance.

(*Id.* at ¶ 4.) The Star Policy also states, in the event of any payment by Star, "Star will be subrogated to all of the City's rights of recovery for that loss, and the City will execute and

---

[1] "The Insurer agrees to indemnify the Insured for Loss in Excess of the Self-Insured Retention, which Loss is sustained by the Insured, because of liability imposed upon the Insured . . . by the Workers' Compensation Act . . . for damages on account of Bodily Injury . . . , which Bodily Injury . . . is . . . a result of an Occurrence . . . suffered by an Employee of the Insured." (ECF No. 18-1 at ¶ 3.)

[2] "The Named Insured shall retain, as a self-insured retention, per occurrence and as respects combined insured damages and insured allocated costs and expenses of investigation, defense, negotiation and settlement applicable to such damages, the sum . . . $400,000 for Workers' Compensation. . . . The company's limit of liability, . . . shall apply solely in excess of the Named Insured's self-insured retention." (ECF No. 18-1 at ¶ 3.)

deliver instruments and papers and do whatever else is necessary to secure those rights." (*Id.* at ¶ 7.)[3]

On January 20, 2011, John Fazio ("Fazio"), an employee of the Asbury Park Fire Department, "suffered life-threatening injuries while fighting a fire." (ECF No. 1-2 at ¶ 8.) Following a workmen's compensation action by Fazio, and pursuant to the policy, the City paid $400,000.00 self-insured retention limit, and Star paid $2,607,227.50 in workmen's compensation benefits, which, pursuant to N.J.S.A. § 34:15-40, created a lien totaling $3,007,227.50. (*Id.* at ¶¶ 9-11 (citing N.J.S.A. § 34:15-40(b) (entitling employers to be reimbursed for workmen's compensation payments by placing liens against any third-party recovery paid to the employee)).)

On December 28, 2012, Fazio filed suit against a third party related to the injuries suffered on January 10, 2011, and the City and Star asserted a workmen's compensation lien in order to preserve their reimbursement rights. (ECF No. 1-2 at ¶¶ 12-13 (citing *Fazio v. Jackson Land-Kovitz, LLC, et al.*, Dkt. No. Mon-L-37-13).) Fazio settled for $2,700,000.00 and agreed to set aside $935,968.25 in partial satisfaction of all liens held by the City and Star. (ECF No. 1-2 at ¶¶ 14-15.) The $935,968.25 is being held in escrow by workmen's compensation defense counsel until otherwise "directed by the City or Star or ordered by the Court." (*Id.* at ¶ 18.)

Star seeks to recover the entire amount being held in escrow, but the City argues it "has subrogation rights arising out of its payment of its self-insured retention of $400,000.00 and is

---

[3] "In the event of any payment under this Insurance contract, the Insurer shall be subrogated to all of the Insured's rights of recovery therefor against any person or organization, and the Insured and the Service Company shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. No person or organization shall do anything to prejudice such a right." (ECF No. 18-1 at ¶ 7.)

entitled to be reimbursed out of the" amount in escrow. (*Id.* at ¶¶ 16-17.) Accordingly, on May 11, 2017, Asbury Park filed a Complaint in the Superior Court of New Jersey, Dkt. No. Mon-L-1820-17, seeking, pursuant to the Uniform Declaratory Judgment Act, N.J.S.A. § 2A:16-50, *et seq.*, "a declaration that it is entitled to recovery of its $400,000.00 self-insured retention paid to [Fazio] in satisfaction of Worker's Compensation claim." (*Id.* at "Preliminary Statement.")

On July 11, 2017, Star filed a Notice of Removal with this Court pursuant to 28 U.S.C. §§ 1441 and 1446. (ECF No. 1.) On August 11, 2017, the City filed a Motion for Remand, and on March 26, 2018, this Court denied the City's Motion to Remand. (ECF No. 6; ECF No. 6-2.)

On August 1, 2017, Star filed its Answer with counterclaims, seeking declaratory judgment, alleging the City is not entitled to subrogation until Star has been paid in full, because the policy only agreed to indemnify the City for a covered workmen's compensation loss in excess of the City's self-insured retention and asserted a breach of contract claim. (ECF No. 5 at ¶¶ 5, 17, 18, 21.) Both parties moved for summary judgment on June 22, 2018 (ECF Nos. 17, 18), and the motions were both opposed on July 2, 2018 (ECF Nos. 19, 20) and fully briefed by July 9, 2018. The court heard oral argument on July 17, 2018. The issue appears to be one of first impression.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law."

*Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 248-49. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Both parties agree there are no facts in dispute and this is a question of law ripe for adjudication by summary judgment.

### III. DECISION

The City contends the make-whole doctrine applies, and therefore, the City should be compensated for its loss, namely the $400,000 payment of the self-insured retention, before

5

Star can recover any of the lien proceeds. (ECF No. 17 at 14.) Star argues it should be granted the entirety of the $935,968.25 settlement because the plain language of the contract states the City agreed to absorb the first $400,000.00 of any workers' compensation loss. (ECF. No. 19 at 7.)

Courts cannot make contracts for parties. *Kampf v. Franklin Life Ins. Co.*, 161 A.2d 717, 720 (N.J. 1960). They can only enforce the contracts which the parties themselves have made. *Id.* "When the terms of an insurance contract are clear, it is the function of a court to enforce it as written and not to make a better contract for either of the parties." *Id.* Pursuing equity does not justify departing from the terms of an insurance contract that parties voluntarily entered. *Pennbarr Corp. v. Ins. Co. of N. Am.*, 976 F.2d 145, 151 (3d Cir. 1992) (citing *In re Community Medical Ctr.*, 623 F.2d 864, 866 (3d Cir. 1980) ("[W]e may not make a different or better contract than the parties themselves saw fit to enter into.")). When interpreting the language of an insurance policy, it is the court's "responsibility 'to give effect to the whole policy, not just one part of it.'" *Id.* (quoting *Arrow Indus. Carriers, Inc. v. Continental Ins. Co.*, 556 A.2d 1310, 1315 (N.J. Super. Ct. Law Div. 1989)).

In *Providence Washington Ins. Co. v. Hogges*, the Superior Court of New Jersey, Appellate Division, found that, without clear, express terms to the contrary, the insured must be "made whole" before the insurer can recover anything from a third-party tortfeasor. 171 A.2d 120, 124 (N.J. Super. Ct. App. Div. 1961). However, the court acknowledged this right may be altered by a contract. *Culver v. Ins. Co. of N. Am.*, 559 A.2d 400, 404 (N.J. 1989) (citing *Hogges*, 171 A.2d 120). The make-whole doctrine is a rule of interpretation and a gap filler. *Walker v. Rose*, 22 F. Supp. 2d 343, 350 (D.N.J. 1998). Additionally, parties have the ability to sign away their make-whole rights when entering into an insurance contract. *Hogges*, 171 A.2d

at 124; *see also Cagle v. Bruner*, 112 F.3d 1510, 1520 (11th Cir. 1997) (stating "because the make whole doctrine is a default rule, the parties can contract out of the doctrine"). Therefore, if a plan's reimbursement language is unambiguous, the terms within the plan override the make-whole doctrine. *Walker*, 22 F. Supp. 2d at 352. "The make whole rule is an equitable principle which, absent an agreement to the contrary, prohibits an insurer from enforcing a right to subrogation until the insured has been fully compensated for his injuries--i.e., made whole." *Walker*, 22 F. Supp. 2d at 350; *see also National Unions*, 621 F.3d at 714; *Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency, Inc.*, 72 A.3d 36, 40 (Conn. 2013).

However, the doctrine of subrogation allows an insurance company, which has made an agreement with the insured, to substitute itself for the insured, allowing the insurance company to proceed against a third party. *Fireman's Fund*, 72 A.3d at 39; *see also Travelers' Ins. Co. v. Brass Goods Mfg. Co.*, 146 N.E. 377 (1925) (stating "subrogation is substitution . . . of one person in the place of another so that he who is substituted succeeds to the rights of that other in relation to . . . its rights"). Subrogation rights are created by an agreement between the insurer and the insured. *Culver*, 559 A.2d at 402. Subrogation promotes equity by preventing an insured from recovering "more than full indemnification as a result of recovering from both the wrongdoer and the insurer for the same loss." *Fireman's Fund*, 72 A.3d at 40.

In *Fireman's Fund*, the court decided the make-whole doctrine does not apply to insurance policy deductibles. *Id*. at 38. The insured asserted before the insurer gained any right of equitable subrogation from a responsible third party, the insured was entitled to recover the deductible. *Id.* at 39. The insurer contended the make-whole doctrine does not apply to deductibles because the deductible is not a part of the loss which the make-whole doctrine applies. *Id*. Furthermore, the insurer stated applying the make-whole doctrine to deductibles

7

would convert an insurance policy with a deductible to an insurance policy without a deductible. This would allow the insured to gain an unbargained-for windfall at the expense of the insurer. *Id*. The court stated:

> A deductible is a thin layer of first dollar liability retained by the consumer (and specifically not transferred to the insurer) to ensure risk-sharing and loss avoidance. Under the policy, the insured agreed to pay the deductible as a first dollar obligation prior to implicating the insurer's obligation to cover the damages. Therefore, the loss of the deductible is not a shortfall in the insurance coverage.

*Id*. at 43. As such, the court determined applying the make-whole doctrine would force the insurer to accept the risk of first dollar liability. *Id*. The court concluded the equitable considerations supporting the make-whole doctrine are inapplicable to deductibles to estop the insured from receiving an unbargained-for windfall. *Id*. at 47.

According to the plain language of the Star Policy, the City agreed to retain the first $400,000 as a self-insured retention with Star's coverage beginning "solely in excess of the [City's] self-insured retention." (ECF. No 18-2.) The Star Policy requires Star to indemnify the City for a loss, in excess of the City's self-insured retention, sustained by the City because of liability imposed on the City by the Worker's Compensation Act. (ECF No. 18-3.) Further, the Star Policy states, "[Star's] limit of liability, . . . shall apply *solely* in excess of the Named Insured's self-insured retention." (ECF No. 18-3 (emphasis added).)

The excess workers' compensation endorsement in the Star Policy also provides:

> In the event of any payment under this Insurance contract, the Insurer shall be subrogated to all of the Insured's rights of recovery . . . and the Insured . . . shall executive and deliver instruments and papers and do whatever else is necessary to secure such rights.

(*Id.*) This Court does not have the liberty to rewrite the Star Policy. *See National Unions*, 621 F.3d at 717; *Kampf*, 161 A.2d at 720; (ECF No. 18-3). When interpreting the language in insurance policies, this Court reads the relevant provisions, "each in the context of its corresponding insurance policy as a whole, giving meaning to each provision." *National Unions*, 621 F.3d at 717; (ECF No. 18-3). Read together, the Star Policy unambiguously states the City has no insurance coverage for the first $400,000.00 and, therefore, is not entitled to acquire the lien funds before Star has been fully reimbursed.

To this point, the court's decision in *Hogges* is instructive. The insured must be made whole before the insurer, *unless* there exist clear express terms to the contrary. Here, there exist clear terms to the contrary, *see Hogges*, 171 A.2d at 124; (ECF No. 18-3), and therefore, applying the make-whole doctrine would be inappropriate and would lead to an unintended and unbargained-for windfall for the City. (*See id.*) The make-whole doctrine is a gap filler in contract interpretation, and because the relevant provisions of the Star Policy are unambiguous, there is no need to apply such a doctrine. *See Walker*, 22 F. Supp. 2d at 350; (ECF No. 18-3).

Furthermore, according to the doctrine of subrogation, because the City and Star made an express agreement, Star has the right to substitute itself for the City and is subrogated to all of the City's rights of recovery. *See Hogges*, 171 A.2d at 124; *Fireman's Fund*, 72 A.3d at 39; (ECF No. 18-3). Applying this doctrine of subrogation promotes equity because it prevents the City from recovering "more than full indemnification as a result of recovering from both the wrongdoer and the insurer for the same loss" because the City did not purchase the first $400,000.00 of a workers' compensation loss. *Fireman's Fund*, 72 A.3d at 40; (ECF No. 19 at 10).

Asbury Park claims the cases cited above and relied on by this Court are inapplicable because they refer to deductibles rather than self-insured retentions. (ECF No. 19 at 9.) However, for the purposes of this case, whether the payment was a deductible or a self-insured retention is immaterial. (*Id.*) "Both a deductible and a self-insured retention are the amounts of a loss for which the insured is responsible; they are risks of loss that are not transferred to an insurer." (*Id.*) Regarding an insurance policy, deductibles and self-insured retentions only differ in timing. (*Id.*) With a deductible, the insurer pays the loss initially and is reimbursed after; with a self-insured retention, the insured is responsible for the loss itself. (*Id.*) For the purposes of allocating subrogation recovery, the timing of the payment of the loss is immaterial and will not be considered by this Court. (*Id.*)

Regarding both a deductible and a self-insured retention, the insured agreed to be responsible for a certain, pre-determined loss. (*Id.*) In this case, the loss was $400,000.00. (*Id.*) If the City wanted first dollar coverage, it could have negotiated this with Star when the insurance policy was drafted. *See Fireman's Fund*, 72 A.3d at 38; (ECF No. 19 at 10). Therefore, like in *Fireman's Fund*, applying the make-whole doctrine to self-insured retentions would convert the Star Policy to an insurance policy without a self-insured retention, allowing the City to gain an unbargained-for windfall at the expense of Star. *See* 72 A.3d at 38. Accordingly, because the plain language of the Star Policy states Star has the priority over the recovery of the lien proceeds, the make-whole doctrine does not apply.

## IV. CONCLUSION

For the reasons set forth above, Asbury Park's Motion for Summary Judgment is **DENIED**, and Star's Motion for Summary Judgment is **GRANTED**. An appropriate order will follow.

**Date:** October 1, 2018  /s/ *Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**